## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------------------x

Bridget Hom,

                Plaintiff,                      **C.A. No.:** 9:23-cv-81513


       -against-                             **DEMAND FOR JURY TRIAL**

Transunion, LLC,
Equifax Information Services, LLC,
Experian Information Solutions, Inc.,
Citibank, N.A.,
Portfolio Recovery Associates, L.L.C.,
Wells Fargo Bank, National Association,

               Defendant(s).

------------------------------------------------------------------------x

## COMPLAINT

Plaintiff Bridget Hom ("Plaintiff"), by and through her attorneys, and as for her Complaint against Defendant Transunion, LLC ("Transunion"), Defendant Equifax Information Services, LLC ("Equifax"), Defendant Experian Information Solutions, Inc. ("Experian"), Defendant Citibank, N.A. ("Citi"), Defendant Portfolio Recovery Associates, LLC ("Portfolio"), and Defendant Wells Fargo Bank, National Association ("Wells Fargo") respectfully sets forth, complains, and alleges, upon information and belief, the following:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as well as 15 U.S.C. § 1681p *et seq.*

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), being that the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

3. Plaintiff brings this action for damages arising from the Defendants' violations of 15 U.S.C. § 1681 *et seq*., commonly known as the Fair Credit Reporting Act ("FCRA").

## PARTIES

4. Plaintiff is a resident of the State of Florida, County of Palm Beach.

5. At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

6. Transunion is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district. Transunion is a Delaware corporation registered to do business in the State of Florida and may be served with process upon the Prentice-Hall Corporation System, its registered agent for service of process at 1201 Hays St, Tallahassee, FL 32301.

7. At all times material hereto, Transunion is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) to third parties.

8. At all times material hereto, Transunion disbursed such consumer reports to third parties under a contract for monetary compensation.

9. Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district. Equifax is a Georgia corporation registered to do business in the State of Florida and may be served with process upon the Corporation Service Company, its registered agent for service of process at 1201 Hays St, Tallahassee, FL 32301.

10. At all times material hereto, Equifax is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) to third parties.

11. At all times material hereto, Equifax disbursed such consumer reports to third parties under a contract for monetary compensation.

12. Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district. Experian is an Ohio corporation registered to do business in the State of Florida and may be served with process upon the C T Corporation System, its registered agent for service of process at 1200 S Pine Island Rd #250, Plantation, FL 33324.

13. At all times material hereto, Experian is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) to third parties.

14. At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

15. Citi is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2, with an address for service of process at C T Corporation System 28 Liberty St New York, NY 10005-1406.

16. Portfolio is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2, with an address for service of process care of Corporation Service Company 1201 Hays St, Tallahassee, FL 32301.

17. Wells Fargo is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2, with an address for service of process at 1201 Hays St, Tallahassee, FL 32301.

## **FACTUAL ALLEGATIONS**

18. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

19. On September 8, 2020, Judge Dina Keever- Agrama of Palm Beach County Florida, ordered the Final Judgement of Dissolution of Marriage under Case #50-2020-DR-006137-****-NB.

20. Plaintiff had previously entered into a Marital Settlement Agreement (hereinafter "Agreement") with her ex-husband, Edward DJ Hom, on July 30, 2020 "that disposes of the Marital assets and liabilities."

21. Per the Court-Ordered Agreement (Paragraph # 9, Sub "Paragraph G. Debts"), it states: "There are two debts of the wife, as listed in the attached Exhibit for her student loan and coaching classes. These two debts which are in her name and have been incurred by the wife, shall be her sole obligation."

22. The Agreement further states: "All other debts in her name as listed in the attached exhibit, the husband agrees to take full responsibility of paying same and shall indemnify and hold the wife harmless from any liability".

23. The Agreement additionally states: "All other debts in her name as listed in the attached exhibit or any other debt that is in the wife's name even if not mentioned in the attached exhibit, the husband agrees to take full responsibility of paying same and shall indemnify

and hold the wife harmless from any liability. Furthermore, the husband agrees to make all reasonable efforts to pay wife's debt timely as to not affect her credit".

24. Therefore, beginning January 2020, by law Plaintiff only remained responsible for Plaintiff's student loans and coaching classes and nothing further.

25. Furthermore, any late payment notations, charge-offs, collection accounts or any other derogatory information reporting on accounts for credit activity for January 2020 or any date subsequent thereto should not be attributed to Plaintiff.

26. The derogatory reporting on accounts Plaintiff is no longer responsible for has greatly affected the Plaintiff's creditworthiness and her ability to obtain new lines of credit.

<u>CitiCards Dispute and Violation</u>

27. Upon information and belief, on a date better known to Equifax, Transunion and Experian ("Bureaus"), the Bureaus prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to a CitiCards account appearing on her credit reports with an account number of 54241813XXXXXX; (Date Opened: 4/18/2018) (hereinafter "Citi Account").

28. The inaccurate information furnished by Citi and published by the Bureaus is inaccurate since at the time of the reported late payment notations and charge-off notations, the Citi Account was not the responsibility of the Plaintiff.

29. Experian marks Plaintiff as 30 days late in March 2020, 60 days late in April 2020, 90 days late in May 2020, 120 days late in June 2020, and 150 days late in July 2020.

30. Experian marks Plaintiff as "charged off" from August 2020 through the present.

31. Equifax and Transunion mark Plaintiff as 60 days late January 2020, 90 days late in February 2020, and 120 days late in each of March and April 2020.

32. Equifax and Transunion mark Plaintiff as "charged off" from May 2020 through the present.

33. Transunion marks Plaintiff with a status of "charge-off."

34. The Bureaus all list Plaintiff with an outstanding balance of $2,807.

35. Plaintiff was not late on the Citi Account from January 2020 through July 2020.

36. Plaintiff's Citi Account was not charged off in May 2020, August 2020, or any of the months subsequent thereto.

37. Plaintiff does not owe Citi $2,807.

38. Pursuant to the so-ordered Agreement, Plaintiff was not responsible for this Citi Account as of January 2020, so any derogatory late payment notations, charge-off notations, or outstanding balances should not be reporting on Plaintiff's credit reports.

39. It is materially misleading to make it appear that Plaintiff has late payments and charge-offs during a timeframe in which Plaintiff was not legally responsible for the Citi Account.

40. Plaintiff first disputed the Citi Account with the Bureaus with a letter dated June 30, 2022.

41. Plaintiff's dispute provided a lengthy explanation and included supporting documentation to prove why the late payment and charge-off notations should not be reported on Plaintiff's credit reports.

42. Experian and Equifax failed to provide Plaintiff with a response to her first dispute letter, in violation of the law.

43. Transunion provided a so-called "verification" that the Citi Account was accurate.

44. In a second letter dated March 28, 2023, Plaintiff re-disputed the Citi Account with all of the Bureaus.

45. Plaintiff did not receive a response from Experian or Equifax, in violation of the law.

46. Despite Plaintiff's multiple disputes and the fact that Plaintiff was no longer legally responsible for the Citi Account, the Bureaus continued to report Plaintiff's Citi Account with late payment and charge-off notations as well as a false outstanding balance.

47. The Bureaus have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that they have disseminated to various persons and credit grantors.

48. Potential credit grantors reviewed Plaintiff's credit reports, as evidenced by soft and hard pulls on Plaintiff's credit reports.

49. It is believed and therefore averred that the Bureaus notified Citi of Plaintiff's dispute letters.

50. Upon receipt of the dispute of the Citi Account from the Plaintiff by the Bureaus, Citi failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer reports of the Plaintiff with respect to the disputed Citi Account.

51. Had Citi performed a reasonable investigation of the Plaintiff's multiple disputes, it would have been revealed to Citi that the derogatory information related to Citi Account reporting starting from January 2020 to the present was inaccurate.

52. Despite Plaintiff's multiple disputes that the information on her consumer reports was inaccurate with respect to the late payment and charge-off notations on the disputed Citi Account, the Bureaus did not timely evaluate or consider any of the information, claims,

or evidence of the Plaintiff and did not timely make an attempt to substantially or reasonably verify that the derogatory information concerning the disputed Citi Account was inaccurate.

53. The Bureaus violated 15 U.S. Code § 1681i (a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

54. Had the Bureaus performed a reasonable investigation of the Plaintiff's dispute, it would have been revealed to the Bureaus that the derogatory information related to Citi Account reporting from January 2020 to the present was inaccurate.

55. Had the Bureaus reviewed the Agreement which Plaintiff included in her dispute package, they would have discovered that Plaintiff was no longer legally responsible for the Citi Account as of January 2020 and therefore any information as of January 2020 or later should not be reporting on her credit reports.

56. Notwithstanding Plaintiff's efforts, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

57. This inaccurate information on Plaintiff's credit report has negatively affected her credit score.

58. Plaintiff was denied credit due in substantial part to Defendants' actions and omissions.

59. Plaintiff applied for a loan through Upgrade and received a denial via e-mail.

60. Plaintiff applied for a Personal Loan from DCU and received a denial via e-mail.

61. Plaintiff applied for a credit card with Capital One and received a denial via e-mail.

62. As a result of Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

<u>Portfolio RC Dispute and Violation</u>

63. Upon information and belief, on a date better known to Transunion, Equifax and Experian ("Bureaus"), the Bureaus prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to Plaintiff's Portfolio RC account with an account number of 601918362014****; (Date Opened By Debt Buyer: 10/21/2020) (hereinafter "Portfolio Account").

64. Plaintiff is a consumer pursuant to the FDCPA.

65. Plaintiff has a consumer debt with Synchrony Bank.

66. Upon information and belief, Synchrony Bank sold the subject debt to Portfolio for the purpose of debt collection.

67. Portfolio is a debt collector, as defined by the Fair Debt Collection Practices Act ("FDCPA"), § 1692a (6).

68. Portfolio's furnishing of Plaintiff's personal information to the Bureaus was an attempt to collect a debt.

69. As of January 2020, a so-ordered Agreement obligated Plaintiff's ex-husband to take financial responsibility for all outstanding debts, including the debt at issue.

70. Portfolio violated the FDCPA, § 1692(e)(2) and 1692(e)(10) by mischaracterizing the subject debt as a debt owed by Plaintiff.

71. The Portfolio Account lists an outstanding debt of $791.

72. Plaintiff does not in fact owe Synchrony or Portfolio $791.

73. A collection account is a seriously derogatory account and has a significant impact to a consumer's credit score and perceived creditworthiness with potential lenders.

74. It is materially misleading to make it appear that Plaintiff has an open unpaid balance for an account which Plaintiff was never responsible for from the time Portfolio purchased the subject account and began reporting a collection account on Plaintiff's credit reports.

75. Plaintiff first disputed the Portfolio Account with the Bureaus in a letter dated June 30, 2022.

76. Plaintiff provided a lengthy explanation along with supporting documentation to prove why the Portfolio Account should not be reporting on Plaintiff's credit reports at all.

77. The Bureaus all failed to provide Plaintiff with a response.

78. In a second letter dated March 28, 2023, Plaintiff re-disputed the Portfolio Account with all of the Bureaus.

79. Plaintiff did not receive a response from Experian or Equifax.

80. On May 6, 2023, Plaintiff received a form response from Transunion stating account "verified as accurate."

81. Despite Plaintiff's multiple disputes and the fact that Plaintiff was not responsible for this debt, the Bureaus continue to report Plaintiff's Portfolio Account as a collection account with an unpaid balance.

82. The Bureaus have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that they have disseminated to various persons and credit grantors.

83. Potential credit grantors reviewed Plaintiff's credit reports, as evidenced by soft and hard pulls on Plaintiff's credit reports.

84. It is believed and therefore averred that the Bureaus notified Portfolio of the Plaintiff's dispute.

85. Upon receipt of the dispute of the Portfolio Account from the Plaintiff by the Bureaus, Portfolio failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Portfolio Account.

86. Had Portfolio performed a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Portfolio that the Portfolio Account should not be reporting on Plaintiff's credit reports at all.

87. Despite Plaintiff's multiple disputes that the information on her consumer reports was inaccurate with respect to the disputed Portfolio Account, the Bureaus did not timely evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not timely make an attempt to substantially or reasonably verify that the derogatory information concerning the disputed Portfolio Account was inaccurate.

88. The Bureaus violated 15 U.S. Code § 1681i (a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

89. Had the Bureaus performed a reasonable investigation of the Plaintiff's dispute, it would have been revealed to the Bureaus that the Portfolio Account should not be reporting on Plaintiff's credit report at all.

90. Had the Bureaus reviewed the Agreement which Plaintiff included in her dispute package, they would have discovered that Plaintiff was not responsible for the subject debt.

91. Notwithstanding Plaintiff's efforts, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

92. This inaccurate information on Plaintiff's credit report has negatively affected her credit score.

93. Plaintiff was even denied new lines of credit due in substantial part to Defendants' actions and omissions.

94. Plaintiff applied for a loan through Upgrade and received a denial via e-mail.

95. Plaintiff applied for a credit card with Capital One and received a denial via e-mail.

96. Plaintiff applied for a Personal Loan from DCU and received a denial via e-mail.

97. As a result of Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

<u>Wells Fargo Bank Dispute and Violation</u>

98. Upon information and belief, on a date better known to Transunion, Equifax and Experian ("Bureaus"), the Bureaus prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to a Wells Fargo

Bank account with an account number of 442644XXXXXXX; Date Opened: 3/9/2018 (hereinafter "Wells Fargo Account").

99. The inaccurate information furnished by Wells Fargo and published by the Bureaus is inaccurate since the Wells Fargo Account is reporting charge-off notations from January 2020 to the present and listing an outstanding balance of $13,750.

100. As of January 2020, a so-ordered Agreement obligated Plaintiff's ex-husband to take financial responsibility for all outstanding debts, included the debt at issue.

101. As of January 2020, Plaintiff was not responsible for the Wells Fargo Account.

102. Wells Fargo is falsely reporting charge-off notations from January 2020 to the present.

103. The Wells Fargo Account is falsely reporting an open balance of $13,750.

104. The Bureaus all report Plaintiff with more months of derogatory charge offs than is accurate.

105. The Bureaus all report a current outstanding balance for which Plaintiff is no longer responsible.

106. Experian and Transunion report Plaintiff as charged off from January 2020 to the present.

107. Equifax reports Plaintiff as charged off from January 2020 through June 2021.

108. As Plaintiff was not responsible for this Wells Fargo Account as of January 2020 per the Agreement, the charge off notations for January 2020 and on should not be reporting on Plaintiff's credit reports.

109. It is materially misleading to make it appear that Plaintiff was charged off during a timeframe in which Plaintiff was no longer responsible for the Wells Fargo Account.

110. Plaintiff first disputed the Wells Fargo Account with the Bureaus with a letter dated June 30, 2022.

111. Plaintiff's dispute provided a lengthy explanation and included supporting documentation to prove why the charge off notations and outstanding balance should not be reported on Plaintiff's credit reports.

112. All the Bureaus failed to provide Plaintiff with a response to her dispute letter.

113. On or around March 28, 2023, Plaintiff re-disputed the Wells Fargo Account to the Bureaus.

114. Plaintiff did not receive a response from Experian or Equifax, in violation of the law.

115. On June 7, 2023, Plaintiff received a form response from Transunion stating account "verified as accurate".

116. Despite Plaintiff's multiple disputes and the fact that Plaintiff was no longer financially responsible for the Wells Fargo Account, the Bureaus continued to report Plaintiff's Wells Fargo Account with charge off notations and an outstanding balance.

117. This inaccurate information on Plaintiff's credit reports has negatively affected her credit score. Plaintiff was even denied credit due to Defendants' actions and omissions.

118. The Bureaus have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that they have disseminated to various persons and credit grantors.

119. Potential credit grantors reviewed Plaintiff's credit reports, as evidenced by soft and hard pulls on Plaintiff's credit reports.

120. It is believed and therefore averred that the Bureaus notified Wells Fargo of the Plaintiff's multiple disputes.

121. Upon receipt of the multiple disputes of the Wells Fargo Account from the Plaintiff by the Bureaus, Wells Fargo failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Wells Fargo Account.

122. Had Wells Fargo performed a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Wells Fargo that the Wells Fargo Account should not be reporting on Plaintiff's credit reports as she was no longer financially responsible for this Wells Fargo Account.

123. Despite Plaintiff's dispute that the information on her consumer reports was inaccurate with respect to the charge off notations and outstanding balance on the disputed Wells Fargo Account, the Bureaus did not timely evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not timely make an attempt to substantially or reasonably verify that the derogatory information concerning the disputed Wells Fargo Account was inaccurate.

124. The Bureaus violated 15 U.S. Code § 1681i (a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

125. Had the Bureaus performed a reasonable investigation of the Plaintiff's dispute, it would have been revealed to the Bureaus that the Wells Fargo Account should not be reporting on Plaintiff's credit reports.

126. Had the Bureaus reviewed the Agreement which Plaintiff included in her dispute package, they would have discovered that Plaintiff was no longer legally responsible for the Wells Fargo Account from January 2020 and on.

127. Notwithstanding Plaintiff's efforts, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

128. This inaccurate information on Plaintiff's credit report has negatively affected her credit score.

129. Plaintiff was even denied new lines of credit due in substantial part to Defendants' actions and omissions.

130. Plaintiff applied for a loan through Upgrade and received a denial via e-mail.

131. Plaintiff applied for a credit card with Capital One and received a denial via e-mail.

132. Plaintiff applied for a Personal Loan from DCU and received a denial via e-mail.

133. As a result of Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

## **FIRST CAUSE OF ACTION**
### **(Willful Violation of the FCRA as to the Bureaus)**

134. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

135. This is an action for willful violation of the Fair Credit Reporting Act U.S.C. § 1681 et seq.

136. The Bureaus violated 15 U.S.C. § 1681(e) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that the Bureaus maintained concerning the Plaintiff.

137. The Bureaus have willfully and recklessly failed to comply with the Act. The failure of the Bureaus to comply with the Act includes but is not necessarily limited to the following:

   a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b) The failure to correct erroneous personal information regarding the Plaintiff after a reasonable request by the Plaintiff;

   c) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

   d) The failure to promptly and adequately investigate information which the Bureaus had notice was inaccurate;

   e) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

   f) The failure to continuously note in the credit report that the Plaintiff disputed the accuracy of the information;

   g) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureaus to delete;

   h) The failure to take adequate steps to verify information the Bureaus had reason to believe was inaccurate before including it in the credit report of the consumer.

138. As a result of the conduct, action and inaction of the Bureaus, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect

on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

139. The conduct, action and inaction of the Bureaus was willful rendering the Bureaus liable for actual, statutory and punitive damages in an amount to be determined by a Judge and/or Jury pursuant to 15 U.S.C. § 1681(n).

140. The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Bureaus in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681 (n).

WHEREFORE, Plaintiff, Bridget Hom, an individual, demands judgement in her favor against the Bureaus for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n.

## SECOND CAUSE OF ACTION

### (Negligent Violation of the FCRA as to the Bureaus)

141. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

142. This is an action for negligent violation of the Fair Credit Reporting Act U.S.C. § 1681 et seq.

143. The Bureaus violated 15 U.S.C. § 1681i(a) by failing to delete inaccurate information from the credit file of the Plaintiff after receiving actual notice of such inaccuracies and conducting reinvestigation and by failing to maintain reasonable procedures with which to verify the disputed information in the credit file of the Plaintiff.

144. The Bureaus have negligently failed to comply with the Act. The failure of the Bureaus to comply with the Act includes but is not necessarily limited to the following:

a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b) The failure to correct erroneous personal information regarding the Plaintiff after a reasonable request by the Plaintiff;

c) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

d) The failure to promptly and adequately investigate information which the Bureaus had notice was inaccurate;

e) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

f) The failure to continuously note in the credit report that the Plaintiff disputed the accuracy of the information;

g) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureaus to delete;

h) The failure to take adequate steps to verify information the Bureaus had reason to believe was inaccurate before including it in the credit report of the consumer.

145. As a result of the conduct, action and inaction of the Bureaus, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

146. The conduct, action and inaction of the Bureaus was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

147.The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Bureaus in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, Bridget Hom, an individual, demands judgement in her favor against the Bureaus for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681o.

## **THIRD CAUSE OF ACTION**

### **(Willful Violation of the FCRA as to**

### **CitiCards, Portfolio RC & Wells Fargo bank ("Furnishers"))**

148. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

149. This is an action for willful violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.

150. Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

151. Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

152. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a

furnisher such as the Defendant must be reported to other agencies which were supplied such information.

153. Furnishers violated 15 U.S.C. § 1681s-2 by failing to fully and properly investigate the dispute of the Plaintiff; by failing to review all relevant information regarding same by failing to correctly report results of an accurate investigation to the credit reporting agencies.

154. As a result of the conduct, action and inaction of Furnishers, Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

155. The conduct, action and inaction of Furnishers was willful, rendering Furnishers liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

156. The Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnishers in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Bridget Hom, an individual demands judgement in her favor against Furnishers in for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n.

### **FOURTH CAUSE OF ACTION**

**(Negligent Violation of the FCRA as to**

**CitiCards, Portfolio RC & Wells Fargo bank ("Furnishers"))**

157. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

158. This is an action for negligent violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.

159. Pursuant to the Act, all person who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information in a consumer credit report.

160. Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

161. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher such as the Defendant must be reported to other agencies which were supplied such information.

162. Furnishers are liable to the Plaintiff for failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2.

163. After receiving the Dispute Notice from the Bureaus, Furnishers negligently failed to conduct its reinvestigation in good faith.

164. A reasonable investigation would require a furnisher such as Furnishers to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher.

165. The conduct, action and inaction of Furnishers was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

166. As a result of the conduct, action and inaction of Furnishers, Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

167. The Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnishers in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, Bridget Hom, an individual, demands judgement in her favor against Furnishers for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

## FIFTH CAUSE OF ACTION

### (Violations of the FDCPA as to Defendant Portfolio)

168. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

169. When Portfolio reported the collection account that was not in fact owed by Plaintiff, Portfolio violated the FDCPA by mischaracterizing and exaggerating the amount due, in violation of § 1692(e)(2)(A).

170. As Portfolio used false credit reporting to aid in the collection of an alleged debt, they violated § 1692(e)(10) by falsely representing the amount owed.

171. Furthermore, Portfolio continues to report the Account on the Plaintiff's credit report despite its own failure and inability to properly verify that the Plaintiff is the proper debtor on the Portfolio Account.

172. Portfolio's failure constitutes violations of various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(2), 1692e(8), 1692e(10) and 1692f

173. As a result of Portfolio's violations of the FDCPA, Plaintiff has been damaged and is entitled to damages in accordance with the FDCPA.

WHEREFORE, Plaintiff, Bridget Hom, an individual, demands judgement in her favor against Portfolio for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1692.

## DEMAND FOR TRIAL BY JURY

174. Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues this Complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o(a) be awarded for each negligent violation as alleged herein;

b) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c) For Statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

d) For Statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e) For Punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

f) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

g) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  November 24, 2023                     Respectfully Submitted,

                                              **ZEIG LAW FIRM, LLC**

                                              /s/ Justin Zeig
                                              Justin Zeig, Esq.
                                              3475 Sheridan St. Ste 310
                                              Hollywood, FL 33021
                                              Telephone: (754) 217-3084
                                              Facsimile: (954) 272-7807
                                              justin@zeiglawfirm.com
                                              *Counsel for Plaintiff*